IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| HAWAII PACIFIC FINANCE, LTD.,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA, DEPARTMENT OF TREASURY INTERNAL REVENUE SERVICE,<br><br>Respondent.<br>_____<br>UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>vs.<br><br>CAROLYN RICHEY, PRESIDENT, HAWAII PACIFIC FINANCE, LTD.<br><br>Respondent. | CIVIL NO. 13-00692 DKW-RLP<br>CIVIL NO. 14-00058 DKW-RLP<br><br>[Consolidated]<br><br>**ORDER ADOPTING IN PART AND MODIFYING IN PART FINDINGS AND RECOMMENDATION THAT HAWAII PACIFIC FINANCE, LTD.'S PETITION TO QUASH IRS SUMMONSES BE DENIED AND THAT THE UNITED STATES' PETITION TO ENFORCE IRS SUMMONSES BE GRANTED** |

# ORDER ADOPTING IN PART AND MODIFYING IN PART FINDINGS AND RECOMMENDATION THAT HAWAII PACIFIC FINANCE, LTD.'S PETITION TO QUASH IRS SUMMONSES BE DENIED AND THAT THE UNITED STATES' PETITION TO ENFORCE IRS SUMMONSES BE GRANTED

## INTRODUCTION

Hawaii Pacific Finance ("HPF") objects to the Magistrate Judge's June 26, 2014 Findings and Recommendation ("F&R") denying its Petition to Quash IRS Summonses and granting the United States' Petition to Enforce IRS Summonses. Because the Magistrate Judge correctly determined that the United States established a prima facie case for enforcement, and HPF fails to raise a plausible inference that the IRS Summonses were issued in bad faith, the Court overrules HPF's objections and ADOPTS IN PART and MODIFIES IN PART the Findings and Recommendation.

## BACKGROUND

This consolidated action involves two summonses served on November 25, 2013, issued to Carolyn Richey as President of HPF. The first summons was in the matter of Hawaii Pacific Finance, Ltd., seeking HPF records relating to its Form 1120 for several successive annual fiscal periods ("HPF Summons"). The second summons was issued in the matter of Wagdy A.

Guirguis, a debtor of HPF. ("Guirguis Summons"). HPF has filed a Petition to Quash and the United States has filed a Petition to Enforce the Summonses in the consolidated actions.

According to Richey, in 2001, HPF purchased a note and security interests with Guirguis as debtor. In October 2012, the Internal Revenue Service ("IRS") issued a summons to HPF in the matter of Wagdy A. Guirguis seeking documents and records. On November 21, 2012, HPF complied with the summons. HPF next had contact with the IRS when Revenue Officer Ralph Fuller attempted to levy upon rental proceeds from real property owned by Guirguis that is secured by a first priority mortgage in favor of HPF. HPF asserted that its lien rights to the rental proceeds were superior to those of the IRS. 6/12/14 Richey Decl. ¶¶ 4-10.

An interpleader action commenced to determine the rights of HPF and the IRS to the rental proceeds, and was removed to this district court on October 9, 2013 as *Century 21 Liberty Homes v. United States of America, et al.*, Civ. No. 13-13-00518 LEK-RLP ("Century 21 Action"). On April 7, 2014, according to the Stipulation to Distribute Funds and Order filed in the Century 21 Action, HPF filed a notice of disclaimer to the funds at issue, leaving the United States as the only party with claims to the funds. Civ. No. 13-00518 LEK-RLP, Dkt. Nos. 29, 32.

On May 30, 2014, the Century 21 Action was dismissed with prejudice, by stipulation of the parties. Civ. No. 13-00518 LEK-RLP, Dkt. No. 34.

Richey claims that while the Century 21 Action was pending, Revenue Officer Fuller contacted her by telephone and inquired "whether HPF's tax returns were filed, which information was already in the possession of the IRS." 6/12/14 Richey Decl. ¶ 14. She claims that:

> Fuller also stated to me that he would pull her personal returns. Fuller also told me that this could become a serious matter and that I could 'go to jail for a long time.' I believed the communication from Mr. Fuller to be a threat against HPF and me, personally, if HPF continued to maintain its lien priority over the IRS. Without first ever requesting that HPF voluntarily provide documents, the IRS, through Fuller, issued two summonses to HPF dated November 25, 2013.

6/12/14 Richey Decl. ¶¶ 15-19.

Revenue Officer Fuller, on the other hand, asserts that:

> I explained to Carolyn Richey that refusal to comply with a summons served upon her by the Internal Revenue Service may result in a summons enforcement proceeding wherein a court could order enforcement of the summons and could hold her in contempt for refusal to comply; however, I made no statement as to whether or not she would go to jail as a result of failing to comply. . . .
>
> [T]he summonses issued to Carolyn Richey were not intended as a threat against Petitioner or against Ms. Richey in any way.
> . . .
> I am unaware of any criminal investigation with respect to either Petitioner or Carolyn Richey.

4

4/1/14 Fuller Decl. ¶¶ 16-18.

On December 16, 2013, HPF filed a Petition to Quash the Summonses, and on February 3, 2014, the United States filed an action against HPF and Richey ("Respondents") to enforce the Summonses. The Magistrate Judge held a hearing on the Petition to Quash and the Petition to Enforce the Summonses on June 26, 2014. In the F&R, the Magistrate Judge found that the IRS established that the Summonses were issued in good faith, and that HPF failed to plausibly raise an inference of bad faith. HPF objects to the F&R because the Magistrate Judge "enforced the summonses, and refused to quash them, without an evidentiary hearing as to the legitimate purposes of the summonses." Obj. at 1.

## **STANDARD OF REVIEW**

When a party objects to a magistrate judge's findings or recommendations, the district court must review *de novo* those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations *de novo* if objection is made, but not otherwise.").

5

Under a *de novo* standard, this Court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006); *see also United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988). The district court need not hold a *de novo* hearing. However, it is the Court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendation to which a party objects. *United States v. Remsing*, 874 F.2d 614, 616 (9th Cir. 1989).

## **DISCUSSION**

HPF does not object to the lion's share of the Magistrate Judge's findings and recommendations. To that extent, the F&R is adopted as it were issued by this Court. *Reyna-Tapia*, 328 F.3d at 1121.

To the extent HPF objects, it does so on the grounds that the Magistrate Judge: (1) did not consider Revenue Officer Fuller's threat to pull Richey's personal tax returns; (2) improperly adopted Revenue Officer Fuller's explanation of the alleged threat of jail time; and (3) misconstrued the evidence regarding the lien disputes. Notwithstanding these objections, the Court agrees with the Magistrate Judge that an evidentiary hearing is not warranted, and that the Summonses should be enforced.

**I.     Adoption Of The F&R: No Objection By Respondents**

The Court adopts the following findings made by the Magistrate Judge without objection:

1. The IRS is conducting an investigation to determine HPF's federal tax liabilities for the years 2002 through 2012.

2. The IRS is conducting an investigation to determine the federal tax liabilities for the trust fund recovery penalty under I.R.C. § 6672 for Wagdy A. Guirguis for the tax periods ending March 31, 1999, September 30, 1999, December 31, 1999, March 31, 2000, June 30, 2000, September 30, 2000, December 31, 2000, March 31, 2001, June 30, 2001, September 30, 2001, December 31, 2001, and June 30, 2010.

3. On November 25, 2013, the IRS served two duly issued summonses on Carolyn Richey, President of HPF, which directed Ms. Richey to appear before IRS Revenue Officer Fuller on January 7, 2014, to testify and produce certain books,
records, papers, and other data related to HPF and related to Wagdy A. Guirguis as described in the summonses.

4. As President of HPF, Ms. Richey had access to records pertaining to HPF's returns or returns-related information.

5. As President of HPF, Ms. Richey had access to financial records relating to the collection of the tax liabilities for Wagdy A. Guirguis, who indicated to the IRS that he owes significant monetary amounts to HPF for outstanding loans.

6. Ms. Richey filed a Petition to Quash the Summonses on December 16, 2013.

7. Ms. Richey did not appear before Revenue Officer Fuller on January 7, 2014, and did not produce certain books, records, papers, and other data described in the summonses.

8. Ms. Richey's failure to comply with the IRS summonses continued until February 3, 2014, when the United States filed the Petition to Enforce and the court issued the Order to Show Cause.

9. On February 10, 2013, the Petition and the Order to Show Cause were served on Christopher J. Muzzi, attorney for HPF.

10. HPF has failed to make a showing of facts that give rise to a plausible inference of improper motive.

F&R 9-11.

## II. Respondents' Objections Based On Improper Purpose

Based on the enumerated objections, the primary issue before the Court is whether Respondents have met their burden of showing bad faith

sufficient to require a limited evidentiary hearing. The Magistrate Judge found that that they did not, and this Court agrees.

### A. <u>Legal Framework</u>

The IRS has the burden of establishing a prima facie case for enforcement. *United States v. Powell,* 379 U.S. 48, 57-58 (1964). The IRS must show that the summons (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative steps required by the United States Code. *Id.* The IRS's burden is "slight" and generally can be met by a sworn declaration of the revenue agent who issued the summons that the *Powell* requirements have been met. *Fortney v. United States*, 59 F.3d 117, 120 (9th Cir. 1995). Once the IRS has met its burden, the taxpayer faces the "heavy" burden of showing an "abuse of process" or "lack of institutional good faith." *Id.* An abuse of process occurs "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58.

The United States Supreme Court, in *United States v. Clarke*, 134 S. Ct. 2361, 2365 (2014), recently held "that a bare allegation of improper purpose does not entitle a taxpayer to examine IRS officials. Rather, the taxpayer has a

right to conduct that examination when he points to specific facts or circumstances plausibly raising an inference of bad faith." *Clarke* explains that:

> As part of the adversarial process concerning a summons's validity, the taxpayer is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith. Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge. But circumstantial evidence can suffice to meet that burden; after all, direct evidence of another person's bad faith, at this threshold stage, will rarely if ever be available. And although bare assertion or conjecture is not enough, neither is a fleshed out case demanded: The taxpayer need only make a showing of facts that give rise to a plausible inference of improper motive. That standard will ensure inquiry where the facts and circumstances make inquiry appropriate, without turning every summons dispute into a fishing expedition for official wrongdoing.

*Id.* at 2367-68.

Where the evidence of improper purpose includes conduct by individual agents, the party opposing enforcement must demonstrate that the institutional posture of the IRS was infected by the agent's improper motives, as follows:

> To substantiate their claim that the Service's conduct demonstrates bad faith such that enforcement of the summonses would amount to an abuse of process, the petitioners must show that the IRS, as an institution, issued the summonses with some illegitimate intent or that particular agents' motives "infected the institutional posture of the IRS." *2121 Arlington Heights Corp. v. I.R.S.*, 109 F.3d 1221, 1226 (7th Cir. 1997), citing *United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 316, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978).

*Cohen v. United States*, 306 F. Supp. 2d 495, 505-06 (E.D. Pa. 2004).

   B.   **Analysis**

       1.   **The IRS Has Established a Prima Facie Case**

   The Court agrees with the Magistrate Judge's discussion and findings that the IRS has satisfied the *Powell* factors, as set forth below:

> Here, the Court finds that the IRS has demonstrated that the *Powell* requirements have been met. The IRS submitted the declaration of Revenue Officer Fuller, who issued the Summonses, establishing that the Summonses meet the four *Powell* requirements. See ECF No. 16-1, Fuller Decl. Specifically, Revenue Officer Fuller's declaration establishes that:
>
> (1) the Summonses were issued for a legitimate purpose as part of the IRS's investigation to determine HPF's federal tax liabilities for the calendar years 2002 through 2012 and the IRS's investigation to determine the federal tax liabilities for the trust fund recovery penalty under I.R.C. § 6672 for Wagdy A. Guirguis for the tax periods ending March 31, 1999, September 30, 1999, December 31, 1999, March 31, 2000, June 30, 2000, September 30, 2000, December 31, 2000, March 31, 2001, June 30, 2001, September 30, 2001, December 31, 2001, and June 30, 2010;
>
> (2) the information sought through the Summonses may be relevant to these investigations to help the IRS determine the correct federal tax liabilities of HPF and to help the IRS ascertain Wagdy A. Guirguis's overall financial situation to assist in collecting his federal tax liabilities;
>
> (3) At the time the Summonses were issued they sought documents not already within the IRS's possession; and

11

> (4) all administrative requirements have been met with regard to the summons.

F&R at 3-4. Because the IRS has made a prima facie case for enforcement, the burden shifts to Respondents to show an "abuse of process" or the "lack of institutional good faith." *Fortney,* 59 F.3d 117 at 120.

### 2. HPF Fails to Demonstrate Bad Faith or Improper Process

Upon careful review of the specific objections raised by Respondents, the Court concludes that they have not plausibly raised an inference of bad faith.

The Court first addresses HPF's contentions that the F&R does not address "how it ever could have been acceptable for [Revenue Officer] Fuller to threaten to pull Ms. Richey's personal tax returns, or why that would not at least be the minimal evidence of bad faith requiring a hearing under *Fortney*," and that the F&R "accepts Fuller's explanation and description of his threat of jail time, without admitting that in doing so [it] was in essence weighing the credibility of the witnesses." Obj. at 1516. Even assuming Richey's version of events is true, the alleged statements do not establish an improper purpose by the IRS. That is so because it is the "institutional posture" of the IRS that must be examined; the personal intent of a single agent, while relevant, is not dispositive. *LaSalle Nat'l Bank*, 437 U.S. at 316 (citing *Groder v. United States*, 816 F.2d 139, 144 (4th Cir. 1987)). Courts have emphasized that "the line between enforceable and

unenforceable summonses should not be 'drawn . . . on the basis of the agent's personal intent.'" *United States v. Millman*, 822 F.2d 305, 308 (2d Cir. 1987) (quoting *LaSalle Nat'l Bank*, 437 U.S. at 316). Instead, the purpose of the good faith inquiry "is to determine whether the *agency* is honestly pursuing the goals of § 7602 by issuing the summons." *LaSalle Nat'l Bank*, 437 U.S. at 316 (emphasis added); *see also Millman*, 822 F.2d at 309 (A person challenging an IRS summons "must show the absence of a valid purpose underlying the summons, and must do so by reference to the IRS's institutional posture. . . .").

The Ninth Circuit, interpreting *Groder*, emphasized that bad faith is "not simply an agent acting unreasonably or unsatisfactorily." *Crystal v. United States*, 172 F.3d 1141, 1149 (9th Cir. 1999); *see also Groder*, 816 F.2d at 145 (rejecting taxpayer's attempt to introduce a "reasonable agent" standard into the bad faith inquiry). Indeed, even if the motivation of an individual IRS agent is suspect, the summons may nevertheless be enforced absent a showing that the improper motivation somehow "infected the institutional posture of the IRS." *Crystal*, 172 F.3d at 1150 (quoting *2121 Arlington Heights Corp. v. IRS*, 109 F.3d 1221, 1226 (7th Cir. 1997)). At most, Fuller's alleged threats to pull Richey's personal tax returns, or that she could "go to jail for a long time," constitute tough language. Such "tough language" did not warrant an inference of bad faith in *2121 2121 Arlington Heights Corp*. In that case, the Seventh Circuit found that an

13

agent's purported threat to ruin the respondent's business was insufficient to compel a finding of bad faith on the part of the IRS *as an institution*. 109 F.3d at 1225-26. Instead, the court determined that such remarks amounted to "tough language" that was "simply not enough to show bad faith on the part of the government." *Id.* at 1226. In fact, unprofessional conduct by an individual agent, including making comments identical to those allegedly made here, has been found to be insufficient to show bad faith on the part of the IRS:

> The Respondents also, in attempting to show harassment, put forth evidence of the Agent's statements about Respondents going to jail and the possibility of opening other audits. These, too, are insufficient to show bad faith through improper purpose. "The real issue presented is not whether the taxpayer perceived the Agent's actions as threats, but whether there is a legitimate purpose for the investigation." *United States v. Tex. Inst.*, 755 F.2d 469, 479 (5th Cir. 1985), overruled on other grounds by *United States v. Barrett*, 837 F.2d 1341 (5th Cir. 1988). The Court does not condone the manner in which the Agent apparently communicated with Mr. Doyle, in particular. But unprofessionalism, or even inappropriate expressions of hostility, perhaps born of frustration, do not equate to harassment and retaliation.

*United States v. Doyle*, 2007 WL 2670057, at *5 (D. Kan. Sept. 7, 2007) (footnote omitted). Accordingly, even assuming that Revenue Officer Fuller's conduct was suspect, there is no evidence in the record that it infected the institutional posture of the IRS.

14

Finally, even if Revenue Officer Fuller's statements were somehow false or misleading, Respondents did not suffer any harm as a result. Unlike the taxpayers in *Crystal*, Respondents did not voluntarily disclose any information in detrimental reliance upon an agent's statement. Rather, in the present case, Respondents refused to turn over any documents and moved to quash. The Court acknowledges Richey's belief that the communications from Revenue Officer Fuller were "a threat against HPF and her, personally," and that "Fuller's action simply crossed the line." Opp. to Petition to Enforce at 1-2. As discussed above, however, the "standard focuses on the institutional posture of the Service instead of on the motivation of individual agents." *United States v. Stuckey*, 646 F.2d 1369, 1375 (9th Cir. 1981).

Next the Court turns to Respondents' argument that the F&R fails to consider a pattern of "ongoing lien disputes in which the summonses (made after the first such dispute arose) could be evidence of bad faith." Obj. at 16. This argument implies that the IRS issued the Summonses to put pressure on Respondents to settle a collateral dispute. The F&R notes that "the Summonses were issued thirteen days after the IRS filed its answer in the Century 21 Action." There is no dispute, however, that the Century 21 Action has been dismissed. F&R 6. The Court agrees with the Magistrate Judge's finding that:

> HPF has not presented sufficient evidence to plausibly raise an inference of bad faith as to the IRS's purpose for issuing the Summonses. As HPF concedes, the Century 21 Action was dismissed by stipulation of the parties. The stipulation was entered into after HPF filed a notice of disclaimer to the funds at issue and the parties entered into a stipulation to distribute the funds. There is absolutely no indication in the record that the disclaimer or stipulations in the Century 21 Action were based on duress or entered into because of any pressure put on HPF by the IRS.

F&R 6. Indeed, if the IRS's purpose in issuing the Summonses was to gain an advantage in the action that has now been dismissed for more than two months, one would expect the IRS's enforcement efforts to wane. That has not been the case.

To the extent Respondents claim that the Summonses were issued to gain an advantage in a second interpleader action involving lien priorities – *see* Civ. No. 14-00256 JMS-BMK, filed by the City and County of Honolulu against defendants GMP Hawaii, Inc., HPF, and the IRS – that claim makes even less sense. *See* F&R 6-7 n.3. The second interpleader action was not filed until May 29, 2014, six months after the Summonses issued. Clearly then, this second action could not have motivated the issuance of the Summonses six months prior.

## **CONCLUSION**

On the basis of the foregoing, and after careful *de novo* review and consideration of the Findings and Recommendation and record in this matter, the

16

Court hereby OVERRULES HPF's Objections and ADOPTS IN PART and MODIFIES IN PART the Magistrate Judge's June 26, 2014 Findings and Recommendation That Hawaii Pacific Finance, Ltd.'s Petition to Quash IRS Summonses Be Denied and that the United States' Petition to Enforce IRS Summonses Be Granted. The Court hereby orders that:

1. Hawaii Pacific Finance, Ltd.'s Petition to Quash Internal Revenue Summonses is DENIED;

2. The United States' Petition to Enforce Internal Revenue Summonses is GRANTED;

3. Respondents are not entitled to an evidentiary hearing to explore their theories of improper purpose, *see LaSalle Nat'l Bank*, 437 U.S. at 316;

4. The IRS Summonses served upon Carolyn Richey, President of Hawaii Pacific Finance, Ltd., shall be enforced and she shall obey the Summonses in full;

5. Carolyn Richey, President of Hawaii Pacific Finance, Ltd., is directed to produce all documents responsive to the IRS Summonses by **August 29, 2014** – the Magistrate Judge's previously ordered compliance date of July 24, 2014 is vacated; and

6. Should Carolyn Richey, President of Hawaii Pacific Finance, Ltd., fail to fulfill the requirements of this order, the United States may move for a hearing on motion for contempt of this Court's order.

IT IS SO ORDERED.

DATED: August 4, 2014 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

_____
*Hawaii Pacific Finance, Ltd. v. U.S.*, Civ. Nos. 13-00692 DKW-RLP, 14-0058 DKW-RLP; ORDER ADOPTING IN PART AND MODIFYING IN PART FINDINGS AND RECOMMENDATION